*Brown et al v. Medicis Pharmaceutical Corporation*,

No. 1:13-cv-01345-RJL

# Exhibit 1

Exhibit to Plaintiffs' Memorandum of Points and Authorities in Support of Joint Motion for Preliminary Approval of the Modified Class Settlement

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Bonnie Brown *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | NO. 1:13-cv-01345 |
| v. | ) | |
| | ) | CLASS ACTION |
| Medicis Pharmaceutical Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MODIFIED SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | NATURE AND RESOLUTION OF THE CASE | 1 |
| III. | GENERAL TERMS OF THE SETTLEMENT AGREEMENT | 6 |
| IV. | COURT APPROVAL/ NOTICE AND FAIRNESS HEARING | 11 |
| V. | RELEASE/ BAR OF CLAIMS | 18 |
| VI. | NO ADMISSION, NO DETERMINATION | 20 |
| VII. | PROGRAMMATIC RELIEF | 21 |
| VIII. | MONETARY RELIEF | 25 |
| IX. | CONFIDENTIALITY | 36 |
| X. | ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL | 38 |
| XI. | ENFORCEMENT AND DISPUTE RESOLUTION | 39 |
| XII. | GOVERNING LAW | 39 |
| XIII. | OTHER CONDITIONS OF SETTLEMENT | 40 |

## I.  INTRODUCTION

Subject to approval by the United States District Court for the District of Columbia (the "Court"), this Modified Settlement Agreement ("Settlement Agreement") sets forth the full and final terms by which the Named Plaintiffs, on behalf of themselves and members of the Class defined herein, and Medicis Pharmaceutical Corporation ("Medicis" or "Defendant") have settled and resolved all claims that have been raised in the Class Action Complaint filed by the Named Plaintiffs herewith.  This Action and Settlement applies to all women regularly employed directly by Medicis or by Medicis indirectly through Quintiles, Innovex or QFR Solutions in the Aesthetics Division or Dermatology Division in the following field sales positions at any time from April 15, 2008 up to and including December 10, 2012:  Professional Sales Specialist, Senior Sales Specialist, Executive Sales Specialist, Territory Manager, Professional Territory Manager, Senior Territory Manager, Executive Territory Manager, Regional Manager, Senior Regional Manager and Executive Regional Manager.  Any women who have previously released sex discrimination claims against Medicis for the entirety of the Class Period during which they were employed directly by Medicis or by Medicis indirectly through Quintiles, Innovex or QFR Solutions, and/or any women who obtained a final judicial determination concerning sex discrimination claims which would otherwise be covered by this Settlement Agreement, are excluded from the definition of the Settlement Class.

## II.  NATURE AND RESOLUTION OF THE CASE

A.   Bonnie Brown, Leslie Baginski,  Lisa Cummings-Gallina, Laurie Introp, Bridget Oliveto, Lisa Levine and Lindsay Pihaly (collectively, "the Named Plaintiffs") retained Mehri & Skalet, PLLC and Valli Kane & Vagnini LLP ( collectively "Class

Counsel") to investigate claims of sex discrimination in employment at Medicis. Named Plaintiffs Brown, Baginski, Cummings-Gallina, Introp, Oliveto and Pihaly each filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against Medicis, alleging, among other things, that Medicis discriminated against them in their employment and against a class of similarly situated female sales employees throughout the United States on the basis of their sex in their employment. Plaintiff Oliveto's charge additionally alleged that she was employed by Medicis through the staffing agency Quintiles. The first of the Plaintiffs' administrative charges of sex discrimination was filed with the EEOC on February 9, 2009. The Plaintiffs made allegations that senior management led by the then Chief Executive Officer of Medicis, Jonah Shacknai, controlled policies and practices that discriminated on the basis of sex and that these executives fostered a hostile working environment that constituted systemic sexual harassment of female sales employees. In their EEOC charges and the demand letter sent to Defendant by Class Counsel, the Plaintiffs asserted that Defendant had a pattern and practice of discriminating against its female field sales employees on the basis of their sex, and that this standard operating procedure affected virtually all aspects of the employment relationship, including hiring, compensation, promotion, leave policies, and frequently led to the direct or constructive discharge of female employees (including several of the named plaintiffs).

B.      On December 11, 2012, after Named Plaintiffs began pursuing their charges of discrimination, Medicis was acquired by Valeant Pharmaceuticals International, Inc. ("Valeant"). After the acquisition, Shacknai was no longer the CEO of Medicis and currently is not employed by the Company. Several male members of the senior

2

management team are also no longer with the Company. Valeant policies and practices are outside the scope of Plaintiffs' investigation of this case.

C.     In an effort to determine whether the parties could settle this dispute prior to the commencement of litigation, the parties' counsel, who are experienced class action attorneys, participated in detailed and exhaustive discussions and negotiations. Beginning in the fall of 2011, the parties engaged the services of Hunter Hughes, Esq., a highly experienced professional mediator, skilled in mediation of complex class actions, including employment discrimination litigation. Hughes became familiar with the case and conducted numerous in-person and telephonic mediation sessions. The mediation sessions and follow-up settlement discussions between the parties concluded with the execution of this Settlement Agreement. During the negotiations, counsel bargained vigorously on behalf of their clients. All negotiations were conducted at arm's length and in good faith.

D.     In order to facilitate settlement discussions, the parties executed tolling agreements covering the time period from September 1, 2011, to the date of this Action.

E.     The Named Plaintiffs and their Counsel devoted significant time and energy to investigating and pursuing the claims of the Class. For settlement purposes, Class Counsel sought, and Defendant produced electronic human resource data and other information concerning the Aesthetics and Dermatology sales workforce and work practices relevant to the claims asserted and damages sought by the Named Plaintiffs and the Class. Class Counsel interviewed approximately 24 Class Members during the course of their investigation who provided information concerning an additional 25 Class Members. Class Counsel also retained an expert to conduct statistical analyses of the human resource data. The expert worked with Class Counsel to review the data, ensure it was complete, request

supplemental data, and analyze the data. The expert also conducted studies similar to those that would have been conducted in preparation for the trial of this matter. Experts from both sides exchanged numerous detailed expert reports, and, while the experts participated in several mediation sessions, the parties also held one day of mediation devoted entirely to a discussion of the experts' findings with the respective experts and counsel. Counsel for the parties have also conducted their own substantial investigations of the matter, including the facts underlying the claims, the legal issues raised in the charges and the Complaint, and Medicis's policies and practices prior to its acquisition by Valeant. The investigations included, among other things, interviewing Class Member witnesses and reviewing relevant company records. As a result of the exchange of information, the investigation, and other activity, counsel for the parties are familiar with the strengths and weaknesses of their respective positions, and have had a full opportunity to assess the litigation risks presented in this case.

F.    Simultaneous with the filing of the original Settlement Agreement, Named Plaintiffs filed a Complaint against Medicis on behalf of themselves as individuals and on behalf of a nationwide class of female sales employees pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), et seq., ("Title VII") and parallel state and local laws, asserting claims of sex discrimination in employment regarding compensation, promotion, pregnancy, maternity leave and caregiver status, sexual harassment/hostile work environment, and individual claims of sex discrimination with respect to termination or constructive discharge. In this Action, the Named Plaintiffs allege, on behalf of themselves and members of the Class defined herein, that they are women who are or were employed directly or indirectly by Medicis in sales positions in the Aesthetics or

4

Dermatology Divisions, that former Medicis CEO Jonah Shacknai and upper sales management perpetuated a hostile environment and controlled compensation and career advancement policies and practices that discriminated against women, and that they experienced sex discrimination in numerous aspects of their employment. In addition to these class claims, the Named Plaintiffs assert various individual, non-class claims, including some for retaliation and age discrimination, as set forth in the Complaint. To the extent that the Complaint does not contain allegations with respect to terminations, it is because the results of Class Counsel's investigation did not warrant the inclusion of class termination claims.

      G.     After several hearings in front of the Honorable Richard J. Leon, the parties modified the original Settlement Agreement to provide that the Class is not asserting hostile environment/harassment claims, although Plaintiffs may re-assert those claims on behalf of the Class if Plaintiffs conclude based on information in the claim forms that the Class could be certified pursuant to Federal Rule of Civil Procedure 23 to assert harassment or hostile environment claims.

      H.     All parties and their counsel recognize that, in the absence of an approved settlement, they would face a lengthy course of litigation, including motions to dismiss, for class certification, and for summary judgment, extensive class and merits discovery, trial and potential appellate proceedings that would consume time and resources and present them with ongoing litigation risks and uncertainties. The parties wish to avoid these risks and uncertainties, as well as the consumption of time and resources, and have decided that an amicable settlement pursuant to the terms and conditions of this modified Settlement Agreement (hereafter called "Settlement Agreement") is more beneficial to them than

continued litigation. Class Counsel believe that the terms of the Settlement Agreement are in the best interests of the Class and are fair, reasonable, and adequate, and Defendant wishes to bring the matter to a conclusion on the terms set forth in this Settlement Agreement.

I.      Without any admission or concession by any party of any issue affecting wrongdoing, liability or damages with respect to the allegations in any administrative charge or in the Complaint, all released claims shall be finally and fully compromised, settled, and released subject to the terms and conditions of this Settlement Agreement, which were the subject of negotiation and agreement by the parties.

## III.   GENERAL TERMS OF THE SETTLEMENT AGREEMENT

A.      **Definitions.**  In addition to terms identified and defined elsewhere in this Settlement Agreement, and as used in this Settlement Agreement, the following terms shall have the following meanings:

1.      "Action" means the lawsuit described above and the allegations contained in the Complaint filed herewith.

2.      "Claims Administrator" means Settlement Services Inc. ("SSI"), managed by attorney Thomas A. Warren, which has been jointly designated by counsel for the parties to administer the Settlement Fund pursuant to Section VIII below and orders of the Court.

3.      "Claim Form" means the form agreed to by the parties and attached hereto as Exhibit 1. The Claim Form shall be attached to the Notice and must be submitted by eligible Class Members to SSI as part of the claims process.

4.      "Class" means the class that the parties seek to have certified, solely for the purposes of this Settlement Agreement, which is defined as all women regularly employed directly by Medicis or by Medicis indirectly through Quintiles, Innovex or QFR Solutions in the Aesthetics Division or Dermatology Division in the following field sales positions at any time from April 15, 2008 up to and including December 10, 2012 (the date prior to Valeant's acquisition of Medicis):   Professional Sales Specialist, Senior Sales Specialist, Executive Sales Specialist, Territory Manager, Professional Territory Manager, Senior Territory Manager, Executive Territory Manager, Regional Manager, Senior Regional Manager and Executive Regional Manager.  Any women who have previously released sex discrimination claims against Medicis for the entirety of the Class Period during which they were employed directly by Medicis or by Medicis indirectly through Quintiles, Innovex or QFR Solutions, and/or any women who obtained a final judicial determination concerning sex discrimination claims which would otherwise be covered by this Settlement Agreement, are excluded from the definition of the Settlement Class.

5.      "Claimants" means Class Members who submit a timely Claim Form.

6.      "Class Counsel" means the law firms of Mehri & Skalet, PLLC, and Valli Kane &Vagnini LLP.  Co-lead class counsel are Cyrus Mehri, Ellen Eardley, and Sara Wyn Kane.

7.      "Class Member" means any person who meets the criteria set forth in the definition of the "Class".

8.      "Class Member Release" means the Release Agreement in the form agreed to by counsel for the parties, and attached hereto as Exhibit 2, with respect to those Class Members who are not Named Plaintiffs as referenced in Section II(A).

**9.** "Class Period" means the period of time commencing on April 15, 2008 and ending December 10, 2012.

**10.** "Company" means Medicis Pharmaceutical Corporation, its parent(s), (including Valeant Pharmaceuticals International, Inc.) ("Valeant"), subsidiaries, successors, assigns, joint ventures, affiliated companies, directors, officers, employees, consultants, representatives, and other agents.

**11.** "Complaint" means the Complaint in this Action filed simultaneously with the original Settlement Agreement.

**12.** "Court" means the United States District Court for the District of Columbia.

**13.** "Defendant" means Medicis Pharmaceutical Corporation, its subsidiaries, successors, assigns, joint ventures, affiliated companies, directors, officers, employees, consultants, representatives, and other agents.

**14.** "Defendant's Counsel" or "Counsel for Defendant" mean the law firms of Goodwin Procter LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP.

**15.** "Depository Bank" means Branch Banking and Trust ("BB&T), a bank selected by Class Counsel, to receive, hold, invest, and disburse the Settlement Fund, subject to the direction of the Claims Administrator.

**16.** "Effective Date" means the date on which all of the following have occurred: (1) the Court has finally approved this Settlement Agreement and entered an order so indicating; (2) the Court has entered an Order and Judgment dismissing the Action, with continuing jurisdiction limited to enforcing this Settlement Agreement, addressing settlement administration matters, and addressing such post-judgment matters as may be

appropriate; and (3) the time for appeal has either run without an appeal being filed or any appeal (including any requests for rehearing *en banc*, petitions for certiorari or appellate review) has been finally resolved.

17.     "Final Approval" means the date on which the United States District Court grants final approval of the Settlement.

18.     "Named Plaintiff Release" means the General Release and Indemnification Agreement in the form, attached hereto as Exhibit 3, agreed to by counsel for the parties with respect to the Named Plaintiffs as referenced in Section V(B).

19.     "Notice" means the Notice of Class Action, Proposed Settlement Agreement, and Settlement Hearing, which is to be mailed and emailed (to the extent email addresses are available) directly to Class Members substantially in the form attached hereto as Exhibit 4.

20.     "Notice of Award" means the letter sent to each eligible Claimant specifying the amount of that Claimant's award, as determined by the Claims Administrator.

21.     "Plaintiffs" or "Named Plaintiffs" means the seven Plaintiffs named in the caption of the Complaint.

22.     "Preliminary Approval" means the order of the Court preliminarily certifying the Settlement Class and preliminarily approving this Settlement Agreement and the form of Notice to be sent to Class Members.

23.     "Recovery Period" means the period of time commencing on February 9, 2007 and ending on the date of Preliminary Approval of this Settlement Agreement.

24.     "Settlement," "Agreement," and "Settlement Agreement" each mean the settlement as reflected in this Settlement Agreement.

25.     "Settlement Class" means the Class that the parties seek to have certified solely for purposes of this Settlement Agreement, excluding any Class Member who files and serves a timely opt out statement that is not subsequently rescinded within the allotted time period for revocation.

26.     "Settlement Class Member" means any person who meets the criteria set forth in the definition of "Settlement Class".

27.     "Settlement Fund" or "Fund" means the settlement monies transferred by Defendant to the Depository Bank pursuant to this Settlement Agreement, including any interest earned thereon, to be held, invested, administered, and disbursed pursuant to this Settlement Agreement.

28.     "Settlement Hearing" means the hearing at which the Court will consider final approval of this Settlement Agreement and related matters.

B.     **Duration of the Settlement.**   The programmatic relief embodied in this Settlement Agreement and the agreements incorporated in it shall remain binding on the parties and their agents and successors for a three-year period following the Effective Date.

C.     **Cooperation.**   The parties agree that they will cooperate to effectuate and implement all terms and conditions of this Settlement Agreement, and exercise good faith efforts to accomplish the terms and conditions of this Settlement Agreement.   The parties agree to accept non-material and procedural changes to this Settlement Agreement if so required by the Court in connection with Final Approval of the Settlement, but are not

10

obligated to accept any changes in the monetary amount of relief or the substantive programmatic relief provided for herein, or any other substantive change.

    **D.**    <u>**Persons Covered by this Settlement Agreement**</u>

        **1.**    <u>**Definition of "Class."**</u>  Solely for purposes of Settlement and judicial approval of this Settlement Agreement, the parties stipulate to the certification of the following Class:

> all women regularly employed directly by Medicis or by Medicis indirectly through Quintiles, Innovex or QFR Solutions in the Aesthetics Division or Dermatology Division in the following field sales positions at any time from April 15, 2008 up to and including December 10, 2012: Professional Sales Specialist, Senior Sales Specialist, Executive Sales Specialist, Territory Manager, Professional Territory Manager, Senior Territory Manager, Executive Territory Manager, Regional Manager, Senior Regional Manager and Executive Regional Manager.  Any women who have previously released sex discrimination claims against Medicis for the entirety of the Class Period during which they were employed directly by Medicis or by Medicis indirectly through Quintiles, Innovex or QFR Solutions, and/or any women who obtained a final judicial determination concerning sex discrimination claims which would otherwise be covered by this Settlement Agreement, are excluded from the definition of the Settlement Class.

        **2.**    <u>**Certification.**</u>  For settlement purposes, the parties will seek certification of a Class to pursuant to Fed. R. Civ. P. 23 (a), as well as hybrid certification under 23(b)(2) and 23(b)(3).

**IV.**    <u>**COURT APPROVAL/NOTICE AND FAIRNESS HEARING**</u>

    **A.**    <u>**Jurisdiction and Venue**</u>

        **1.**    The parties agree that the Court has jurisdiction over the parties and the subject matter of this Action, and the parties waive any challenges to venue for the purposes of Settlement.  The Court shall retain jurisdiction of this Action for three years from the Effective Date of the Settlement Agreement solely for the purpose of enforcing the

settlement agreement and entering all orders and judgments authorized hereunder that may be necessary to implement and enforce the relief provided herein.

**B.     Preliminary Approval**

1.     Prior to execution of this modified Settlement Agreement, the parties have agreed upon a modified form for written Notice of this Settlement Agreement to Class Members, subject to Court approval.

2.     Within ten (10) days after the execution of this modified Settlement Agreement, the parties shall renew their petition to the Court for an order preliminarily certifying the Class; preliminarily approving this Settlement Agreement; approving the Notice to be sent to Class Members describing the terms of the Settlement and informing them of their rights to submit objections and to opt out; and preliminarily enjoining, pending the outcome of the Settlement Hearing, (i) all members of the Class from commencing, prosecuting or maintaining any claim already asserted in, and encompassed by, this Action, and (ii) all Class Members (including those who request exclusion) from commencing, prosecuting or maintaining in any court or forum other than this Court any claim, action or other proceeding that challenges or seeks review of or relief from any order, judgment, act, decision or ruling of the Court in connection with this Settlement Agreement or otherwise in connection with this Action.

**C.     Notice and Settlement Hearing**

1.     Defendant has identified all Class Members and provided the Claims Administrator the following information regarding each Class Member to the extent maintained in the Company's data bases:  the name, social security number last known mailing address, last known email address, employment dates, job titles held for positions

12

within the Class during the Class Period, and additional information reasonably requested by the Claims Administrator. Defendant also has identified for the Claims Administrator any women who have previously released sex discrimination claims against Medicis for any portion of the Recovery Period during which they were employed directly by Medicis or indirectly by Quintiles, Innovex or QFR Solutions, and/or who have previously obtained a final judicial determination concerning sex discrimination claims which would otherwise be covered by the Settlement Agreement. The Claims Administrator shall utilize such information only for the purpose of locating, identifying, and awarding claims to Class Members and shall keep identifying information, including social security numbers, confidential.

2.   Within fifteen (15) days after Preliminary Approval of the Settlement Agreement, the Claims Administrator will send the Notice to each Class Member in the form agreed upon by the parties or such other form as approved by the Court. The parties intend to provide actual notice via U.S. Mail and email to each Class Member to the extent practicable. For U.S. Mail, the Claims Administrator will mail to the last known mailing address provided by Defendant and any updated address in the National Change of Address Database (NCOAD). Additionally, the Claims Administrator will establish a website with the Notice.

3.   The Claims Administrator shall send a Claim Form to each Class Member at the same time the Notice is sent. The Notice or Claim Form shall contain each Class Member's employment dates and job titles held during the Recovery Period (February 9, 2007 to the date of Preliminary Approval), based on the information provided to the Claims Administrator by the Defendant. The Claimants will have the opportunity to

13

dispute or correct this information when submitting a Claim Form. To the extent there is any disagreement relating to the accuracy of the information regarding Claimants' employment dates and job titles held provided by the Defendant, the disagreement shall be resolved by the Claims Administrator.

4.      The Claims Administrator shall provide to Class Counsel a list of those Class Members whose Notice and Claim Form are returned as undeliverable through U.S. Mail. The Claims Administrator will utilize tracing services or any other data the Claims Administrator deems appropriate in an effort to locate such Class Members and will then re-send the Notice and Claim Form to: (a) the last known address as provided by Defendant; (b) the NCOAD address if different from the last known address; and (c) the traced address, if any. The Claims Administrator will maintain a log of its activities undertaken pursuant to this section.

5.      At the approximate midpoint between the date of the first mailing of Notice and the deadline for submitting Claim Forms, the Claims Administrator will send a postcard via U.S. Mail to Class Members who have not yet responded reminding them of the Claim Form deadline using the (a) the last known address as provided by Defendant; (b) the NCOAD address if different from the last known address; and (c) the traced address, if any.

6.      Class Member objections to this Settlement Agreement must be submitted in writing and must include a detailed description of the basis of the objection. Objections must be served on Class Counsel and counsel for Defendant within forty-five (45) days after the Notice is mailed to Class Members. No one may appear at the Settlement Hearing for the purpose of objecting to the Settlement Agreement without first having served her objection(s) in writing within forty-five (45) days after the Notice was mailed to

14

Class Members. Class Counsel will file with the Court the objections received within sixty (60) days after the Notice is mailed to Class Members.

7.      Any Class Member who wishes to opt out of the Class must mail to Class Counsel and counsel for Defendant a written, signed statement that she is opting out. Class Counsel shall file with the Court all opt-out statements that are timely received. The Settlement Class will not include those individuals who file and serve a timely opt-out statement, and individuals who opt out are not entitled to any monetary award under this Settlement Agreement.   With respect to each such opt-out individual, the statute of limitations for her to assert any claims for individual relief will resume running sixty (60) days from the date that the Notice is mailed to the Class, unless she rescinds her opt-out as described below. The Notice mentioned above shall include language stating that any Class Member who wishes to opt out of the Class must mail a written, signed statement that she is opting out of the Class to Class Counsel and counsel for Defendant at [the addresses as listed in the Notice]. To be effective, this opt-out statement must be postmarked by on or before forty-five (45) days after the Notice is mailed to Class Members. The opt-out statement must be mailed to Class Counsel and counsel for Defendant. To be effective, the opt-out letter and statement must include the language specified in the Notice confirming that the individual is aware that by opting out she will forego the opportunity to receive monetary benefits from this Settlement. The Notice will request, but not require, that the Class Members who opt out provide a brief statement of the reasons for opting out in the opt-out letter to be submitted. Class Members who file opt-outs may rescind their opt-outs. To be effective, such rescissions must be in writing and must be mailed to Class Counsel or

counsel for Defendant and postmarked on or before sixty (60) days from the date that the Notice is mailed to the class.

8.     Upon Preliminary Approval, a briefing schedule and Settlement Hearing date will be set at the Court's convenience. The Motion for Final Approval and for Certification of the Class will be due no earlier than thirty (30) days following the close of the objection and opt-out period.

9.     The time periods referenced in this section are guidelines; actual dates will be provided by the Preliminary Approval Order by the Court.

10.     In the event that this Settlement Agreement does not become final and binding, no party shall be deemed to have waived any claims, objections, rights or defenses, or legal arguments or positions, including, but not limited to, claims or objections to class certification, and claims and defenses on the merits. Neither this Settlement Agreement nor the Court's Preliminary or Final Approval hereof shall be admissible in any court regarding the propriety of class certification or regarding any other issue or subject (except for the purpose of enforcing this Settlement Agreement). Each party reserves the right to prosecute or defend this Action in the event that the Settlement Agreement does not become final and binding.

11.     If the number of Class Members who have duly requested exclusion from the Settlement Class in the manner provided in the Court's Preliminary Approval order equals or exceeds the numbers set forth in Appendix 1 filed *in camera* with the Court concurrently with this Settlement Agreement, Defendant shall have the right, for thirty (30) days after the deadline for Class Members to opt out, to either withdraw from and fully terminate this Settlement Agreement by providing written notice to Class Counsel and the

Court, *or* not to withdraw from this Settlement Agreement and take the opt-out credit if any described in this paragraph. Failure to provide written notice to withdraw within the aforesaid thirty (30) day period constitutes a waiver and termination of Defendant's right to withdraw pursuant to this paragraph. The opt out credit that Defendant may receive shall be provided only if a Named Plaintiff opts out and shall be equal to the lowest award paid to a Named Plaintiff who does not opt out, multiplied by (b) the number of Named Plaintiffs who opt out.

12.    If Defendant exercises its option to withdraw from the Settlement, it shall bear all costs and expenses for the Claims Administrator up to $100,000, including but not limited to the costs of Notice to the Class and the cost of notifying the Class of Defendant's withdrawal.

13.    If this Settlement Agreement is not approved by the Court or for any other reason is terminated or fails to become effective in accordance with its terms (or, if following approval by this Court, such approval is reversed or substantively modified), the parties shall be restored to their respective positions that existed in this Action prior to entering into the original Settlement Agreement; the terms and provisions of this Settlement Agreement shall have no force or effect and shall not be used in this Action or in any proceeding for any purpose, the Settlement Fund shall be returned to Defendant, including the interest earned by the Settlement Fund through the date of termination (after deducting all costs and expenses, including costs of providing Notice to Class Members, paid or incurred by the Claims Administrator as of the date of termination); any Judgment entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, *nunc pro tunc*; and the litigation of the Action will resume as if there had been no

Settlement Agreement, with no stipulated Class. The parties retain all rights, claims, and defenses as to class certification and otherwise as to any of the allegations asserted in this Action. This Settlement Agreement will not be considered an admission of liability by Defendant nor represent a cap or floor on damages available to the Named Plaintiffs or the Class. Should the Settlement Agreement not receive Final Approval, the parties' most recent Amended Tolling Agreement (which terminated simultaneously with the filing of the Complaint) shall be revived *nunc pro tunc* and shall be extended through 30 days after the court order denying Final Approval.

## V.     **RELEASE/BAR OF CLAIMS**

A.     All Settlement Class Members, other than the Named Plaintiffs, as a condition of receiving a monetary payment in conjunction with this Settlement Agreement, will be required to execute and deliver to the Claims Administrator a Class Member Release in the form agreed to by counsel for the parties and attached hereto as Exhibit 2. The Class Member Release will release all sex discrimination claims against the Company (which includes Defendant's parent company, Valeant), including without limitation all claims with respect to compensation, career advancement, pregnancy, maternity leave and caregiver status, termination, sexual harassment/hostile work environment and other terms and conditions of employment, under federal, state and local laws from February 9, 2007, up through the date of December 10, 2012. Further, any Named Plaintiff whose EEOC charge has not been dismissed by the EEOC, or who has not been issued a "Right to Sue" letter from the EEOC, shall withdraw that charge with prejudice, as a condition of receiving a monetary payment.

**B.** All Named Plaintiffs, as a condition of receiving a monetary payment in conjunction with this Settlement Agreement, will be required to execute and deliver to the Claims Administrator a Named Plaintiff Release in the form agreed to by counsel for the parties and attached hereto as Exhibit 3. The Named Plaintiff Release is more expansive than the limited release of sex discrimination claims to be executed by other Class Members. It releases all of the Named Plaintiffs' individual claims and is a general release of all claims of any nature against the Company, under federal, state and local laws for any period up through the date of Preliminary Approval. Accordingly, when the Claims Administrator makes determinations as to Class Members' individual monetary awards, as described in Section VIII(E), the Claims Administrator will consider whether the Class Member has executed a Named Plaintiff Release and the claims released, as well as her efforts to advance the interests of the Class.

**C.** The Claims Administrator shall provide all Class Members and each Named Plaintiff with the Class Member Release or Named Plaintiff Release respectively at the time the Notice of Award is provided to them.

**D.** The terms of the Releases, attached hereto as Exhibits 2 and 3, are a material part of this Settlement Agreement and are hereby incorporated as if fully set forth in the Settlement Agreement; if these Releases, attached hereto as Exhibits 2 and 3, are not finally approved by the Court, or the Settlement Agreement cannot become effective for any reason and the Settlement set forth in this Settlement Agreement shall terminate as provided in Section IV(C)(11) or (13) of this Settlement Agreement, then the Named Plaintiff Releases and Class Member Releases shall terminate *nunc pro tunc* and be of no force and effect.

19

**E.**     Any Class Member who does not execute and timely deliver a Class Member Release, and any Named Plaintiff who does not execute and timely deliver a Named Plaintiff Release, as appropriate, shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement, even if said Class Member or Named Plaintiff has not opted out.

**F.**     Class Members who fail to timely opt out or timely file a Claim Form shall, upon the Effective Date, be ineligible to receive any monetary award pursuant to this Settlement Agreement and be deemed to have fully, finally and irrevocably waived, released and discharged Defendant from any and all claims of sex discrimination, whether known or unknown, actual or potential, from February 9, 2007, to December 10, 2012.

## VI.     NO ADMISSION, NO DETERMINATION

**A.**     This Settlement Agreement does not, and is not intended to constitute, nor shall it be deemed to constitute, an admission by any party as to the merits, validity or accuracy of any of the allegations, claims or defenses of any party in this case. The Class Members continue to assert the merits and validity of their claims under Title VII or parallel state and local laws prohibiting sex discrimination. By entering into this Agreement, the Company does not admit or concede, expressly or impliedly, but denies that it has in any way violated Title VII, parallel state and local laws prohibiting sex discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Neither the Court nor any other court has made any findings or expressed any opinion concerning the merits, validity or accuracy of any of the allegations, claims or defenses in this case.

**B.** Nothing in this Settlement Agreement, nor any action taken in implementation thereof, nor any statements, discussions or communications, nor any materials prepared, exchanged, issued or used during the course of the mediation or negotiations leading to this Settlement Agreement, is intended by the parties to, nor shall any of the foregoing constitute, be introduced, be used or be admissible in any way in this case or any other judicial, arbitral, administrative, investigative or other proceeding of whatsoever kind or nature (including, without limitation, the results of the Claims Process established under this Settlement Agreement) as evidence of discrimination, retaliation or sexual harassment or as evidence of any violation of Title VII, parallel state and local laws prohibiting sex discrimination, the common law of any jurisdiction, or any other federal, state or local law, statute, ordinance, regulation, rule or executive order, or any obligation or duty at law or in equity. Notwithstanding the foregoing, this Settlement Agreement may be used in any proceeding in the Court or in mediation or arbitration to enforce or implement any provision of this Settlement Agreement or implement any orders or judgments of the Court entered into in connection herewith.

## VII. PROGRAMMATIC RELIEF

**A.** **Policies and Practices**. The Company agrees to undertake the following actions with respect to its field sales force in its Aesthetics and Dermatology Divisions:[1]

---

[1] The programmatic provisions herein are binding on the Company with respect to all subsequent designations or denotations of the Aesthetics and Dermatology "field sales force" or its "Aesthetics and Dermatology" divisions in the United States during the term of the Agreement. Reorganization, renaming, restructuring, reconstitution, etc., of the Company's Aesthetics and Dermatology "field sales force" or Aesthetics and Dermatology divisions shall not be an excuse for noncompliance with this Agreement, provided that Company continues to employ a field sales force in the United States for the purpose of selling any of the products sold in the Aesthetics and Dermatology Divisions of Medicis during the Class Period and provided that the Company's obligations shall only extend to the reorganized, renamed, restructured or reconstituted portion of the Company where such employees are assigned.

21

      1.      The Company will make an annual communication to its field sales force in its Aesthetics and Dermatology divisions of its comprehensive anti-discrimination policies and complaint procedure which will be available on the employee intranet.

      2.      In connection with the annual communication, senior leadership of the Company's Aesthetics and Dermatology divisions will make a written and oral statement affirming its support for those policies and procedures. The written statement will be on the employee intranet.

      3.      The Company will include training on its comprehensive non-discrimination policies as part of its on-boarding process for all new hires to its field sales force in its Aesthetics and Dermatology divisions.

      4.      The Company will provide comprehensive training on its non-discrimination policies to all employees, managers and supervisors in its sales force in its Aesthetics and Dermatology divisions at least twice over the three-year term as defined in Section VII(B). At least one of the training sessions will occur at the annual sales meeting.

      5.      The Company will make an anonymous hotline available to all field sales force employees in its Aesthetics and Dermatology divisions that will allow them to make complaints about discrimination concerns among other matters. The Company also will designate a high-level employee either in Compliance or Human Resources who will investigate sex discrimination complaints, make recommendations either to the head of Human Resources or the head of Compliance regarding the complaints, provide a written resolution of the matter to the employee, and ensure that any actions required by the resolution are implemented. An employee who disagrees with the Company's written resolution may appeal to the Company Group Chair of Medicis. The Company will keep

22

records of such investigations for at least three years. The designated Human Resources or Compliance employee will have training and experience regarding: conflict resolution, investigation of gender discrimination complaints, and substantive knowledge of Title VII of the Civil Rights Act of 1964.

6.      The Company will provide a vehicle for employees in its field sales force in its Aesthetics and Dermatology divisions to identify their career goals and specifically to register interest in possible advancement to supervisory and management positions. The Company will review the registry before advertising any vacancy in such positions outside the Company.

7.      As part of employees' annual performance review process, the Company will provide field sales force employees in its Aesthetics and Dermatology divisions with appropriate feedback/guidance on steps/improvements the employee should consider to reach his or her stated career goals.

8.      The Company will provide field sales employees in its Aesthetics and Dermatology divisions with information about their sales goals and the factors used to establish them.

9.      The Company will provide field sales employees in its Aesthetics and Dermatology divisions with a vehicle for seeking a review of their sales goals by higher level sales management after first discussing and attempting to resolve any concerns with their immediate managers.

10.      The Company will direct field sales force managers and supervisors in its Aesthetics and Dermatology divisions when interviewing candidates not to ask applicants for employment or candidates for promotions questions about (1) their

relationship status, marital status, plans for marriage, or spouse; or (2) their plans for having children.

11. The Company will provide lawful treatment of field sales force employees in its Aesthetics and Dermatology divisions with caregiving responsibilities consistent with the EEOC Enforcement Guidance 915.002 (May 23, 2007).

12. The Company will structure its consistency bonus program to ensure that field sales force employees in its Aesthetics and Dermatology divisions who take leaves of absence for three months or less for maternity or paternity reasons and who miss more than half of a quarter because of such leave are not evaluated for performance against goal during that quarter for the purpose of determining eligibility for the consistency bonus. Such quarters shall not be counted against an employee for the purpose of determining her consistency bonus in that quarter or in subsequent quarters.

13. For a period of three years, the Company will undertake an internal confidential and privileged analysis of compensation by sex of its field sales force in its Aesthetics and Dermatology divisions at the end of each calendar year following the date of Final Approval of the Settlement Agreement by the Court. Before the end of the first quarter of the following year, the Company will send a letter to Hunter Hughes, who assisted the parties in the mediation of this Action, indicating that the analysis has been completed.

14. The Company will submit three confidential written progress reports to Class Counsel and Hunter Hughes. The reports will include a narrative of the actions taken pursuant to Sections 1 to 14.

B. **Additional Policies and Practices.**

If the Court approves the Class to pursue a settlement of hostile environment/harassment claims, then the programmatic relief also shall include the following provisions:

1.       The Company will include a provision in an appropriate policy/compliance manual for its field sales force in its Aesthetics and Dermatology divisions indicating that when alcohol is permitted to be consumed at company-sponsored events, it should be consumed responsibly and no employee should be pressured to consume alcohol.

2.       The Company will include a provision in an appropriate policy/compliance manual for its field sales force in its Aesthetics and Dermatology divisions discouraging romantic/sexual relationships between supervisors and subordinates.    If the Company learns that a manager/supervisor has engaged in such a relationship, it will review the situation and determine whether transfer, demotion or termination of such manager/supervisor is appropriate.

### C.    Term

The programmatic relief embodied in this Agreement shall remain binding on the parties and their agents and successors for a period of three years following the Effective Date of the Settlement Agreement.

### VIII.    MONETARY RELIEF

A.    **Settlement Fund.**  No later than five (5) business days after Final Approval of this Settlement Agreement, Medicis shall pay by wire transfer or otherwise transmit to the Depository Bank the sum of $7,150,000 ($7.15 million).  The $7.15 million will be placed

in an interest bearing account titled in the name of Medicis Sex Discrimination Settlement Fund, a Qualified Settlement Fund organized and existing under the laws of the State of Florida, intended by the parties to be a "Qualified Settlement Fund" as described in Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq. This payment will be made in order to satisfy the claims of all Named Plaintiffs and Settlement Class Members, as well as for other purposes identified in this paragraph. The monies so transferred, together with any interest subsequently earned thereon, shall constitute the Settlement Fund. The $7.15 million transferred into the Settlement Fund by Defendant shall, with the additional payments for Claims Administration and the additional Employer Payroll Tax Payment described below, constitute the total Settlement cash outlay by Defendant in connection with: (1) the resolution of this matter; and (2) this Settlement Agreement (and attachments). Except as provided in Sections VIII(C) and VIII(G)(2)(c), this sum is inclusive of payment for: (a) all amounts paid to Settlement Class Members, including Named Plaintiffs, which are to be distributed pursuant to Section VIII(E)(4) below; (b) all attorneys' fees and costs awarded by the Court, including those in connection with securing court approval of the Settlement, the claims process and monitoring the Settlement Agreement, other than fees and costs awarded in connection with any successful proceeding to enforce the terms of this Settlement Agreement; and (c) costs in connection with the Settlement Fund, except as provided in Section VIII(C) including, but not limited to, those related to notice, claims processing, legal advice relating to the establishment of the Qualified Settlement Fund and tax treatment and tax reporting of awards to Claimants, preparation of tax returns (and the taxes associated with such tax returns as defined below), and the Claims Administrator's fees and expenses; and (d) applicable federal, state and local

income taxes and the employee's portion of applicable payroll taxes.  The $7.15 million dollar payment to the Settlement Fund does not include Defendant's share of taxes or contributions (*i.e.*, FUTA, SUTA, FICA and Medicare) which will be paid separately by Defendant to the Claims Administrator.  Defendant shall, upon notice from the Claims Administrator as required in Section VIII(G)(2)(c) below, remit any required tax payment to the Claims Administrator.  Nothing in the foregoing provisions of this Section, however, shall release Defendant from expending the resources required to fulfill its responsibilities under this Settlement Agreement.

     **B.**    **Administration by Trustee.**  The Claims Administrator shall serve as a Trustee of the Settlement Fund with respect to the handling, management and distribution of the Settlement Fund, including determining awards for valid claims and reporting and paying taxes on such awards.  In carrying out the duties of the Trustee, the Claims Administrator shall serve as a fiduciary to the Settlement Fund and consult with Class Counsel.  Class Counsel and Defendant shall act in a manner necessary to qualify the Settlement Fund as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq., and to maintain that qualification.

     **C.**    **Additional Payments for Claims Administration.**  Defendant will, up to $100,000, pay the fees and advance the costs of Claims Administration.  Settlement funds that (a) remain undistributed due to checks uncashed by Claimants, and (b) the tenure/backpay and interest portions of settlement funds that would otherwise have been paid to Class Members who opt out as described in Section IV(C)(7), unless the Class Member indicates in her opt out notice that she does not intend to file a lawsuit or claim

against Defendant, will be used to reimburse Defendant for its payment of Claims Administration fees and costs up to $100,000, with any amount in excess of the amount actually paid for claims administration reverting to the Settlement Fund, except to the extent provided in Section IV (C) (11) regarding the opt out credit pertaining to the Named Plaintiffs. Defendant shall not be reimbursed for opt outs by Class Members who, prior to the filing of the Complaint in this Action, have filed claims in any state, federal or local court or any administrative agency alleging sex discrimination. In the event of a dispute over whether a Class Member has indicated that she does not intend to file a lawsuit or claim against Defendant, such dispute shall be submitted to Hunter Hughes for a binding determination as to whether such amount that would have been paid to the Class Member opting out should be used to so reimburse Defendant. Claims Administration fees and costs in excess of $100,000, if any, will be paid from the Settlement Fund.

**D.     Claims Filing Procedures for Settlement of Claims of Named Plaintiffs and Settlement Class Members.**

1.     Settlement Class Members shall be entitled to submit their Claim Forms to the Claims Administrator in accordance with the procedures set forth on the Claim Form. Any individual who previously released sex discrimination claims which would otherwise be covered by this Settlement Agreement, or who obtained a final judicial determination concerning sex discrimination claims which would otherwise be covered by this Settlement Agreement, is not a Class Member and is not eligible to receive a monetary award for those claims.

2.     In order to be eligible for an award from the Settlement Fund, Settlement Class Members, including Named Plaintiffs, must submit a Claim Form which

must be postmarked or e-mailed by 90 days after the day notice is mailed to the Class, or the date established by the Court.  The Claim Form shall be completed in its entirety to the extent applicable.

        3.    The identity of individuals who submit Claim Forms, the content of Claim Forms submitted, and the amount of awards to Claimants will be confidential and will not be disclosed to anyone (including the Company) other than Class Counsel, except the identity of Claimants who are current Medicis employees in the year that the award is paid and the amount of such awards may be provided to the Company to the extent such information is needed to facilitate aggregation of wages for FICA and FUTA purposes (but only to such Company personnel with a strict business need to know such information for FICA and FUTA purposes and only after such individuals have signed a confidentiality agreement in a form agreed to by the parties), to effectuate the terms of the Settlement Agreement, or for good cause shown.  In no case shall the identity of any Claimants be provided to any Company employee in Dermatology or Aesthetics field sales or field sales management or any equivalent position.

    E.    **Claims Administrator's Authority to Determine Award Eligibility**.

        1.    Within a reasonable time period after the date specified for receipt of the Claim Forms and disputes regarding Employment Verification, the Claims Administrator shall render a determination as to the monetary award, if any, that should be paid to each Claimant from the Settlement Fund.  Settlement Class Members who submit a Claim Form will be eligible to receive monies based on a formula developed by Class Counsel and the Claims Administrator, which shall include the following components: (1) a back pay component based on length of service or tenure during the recovery period (February 9,

2007 through December 10, 2012 ); (2) a compensatory damages component based on information provided on the Claim Form regarding individual evidence of alleged sex discrimination and/or compensatory damages; (3) an interest component; (4) information provided by Class Counsel and on the Claim Form regarding the Claimant's contribution to the prosecution of this matter, if any, and (5) the scope of the release to be executed by the individual.   In making compensatory damages awards, the Claims Administrator will consider case law, its prior experience in claims administration, and other relevant factors. After the Claims Administrator reviews and scores the Claim Forms, Class Counsel shall submit to the Court the proposed distribution formula for use in determining the monetary individual awards.   Upon Court approval of the formula, the Claims Administrator shall render a final determination as to the monetary award that should be paid to each Claimant from the Settlement Fund.   The Claims Administrator's determination regarding each Claimant's award pursuant to the formula shall be final and not subject to review by, or appeal to, any court, mediator, arbitrator or other judicial body.   As will be reflected in the final order approving this Settlement, Defendant and Class Counsel shall have no responsibility, and may not be held liable, for any determination reached by the Claims Administrator.

2.     The total amount of such awards shall not exceed the net amount of the Settlement Fund after payment of all administrative and Notice costs and Class Counsel's attorneys' fees and expenses.   Class Counsel shall be entitled to keep any interest on funds set aside for attorneys' fees that accrues before the attorneys' fees are paid.

3.     Sixty-five percent of the total amount to be distributed to Claimants shall be allocated to the back pay component, twenty-five percent of that total amount shall

be allocated to the compensatory damages component, and ten percent of that total amount shall be allocated to the interest component. The Claims Administrator will determine the allocation among back pay, compensatory damages and/or interest for each Claimant based on the information applicable to that Claimant. It is anticipated that not every Claimant will be allocated awards based on the same 65-25-10 percentages, and indeed, it is anticipated that some Claimants may not be allocated one or more of the three components. Any funds not distributed from the compensatory and interest components shall be reallocated to the back pay component.

4.      Following approval by the Court of the distribution formula, the Claims Administrator shall send a Notice of Award to each eligible Claimant, along with a Named Plaintiff Release or a Class Member Release, whichever is applicable. Within a reasonable period of time after receipt of an executed Named Plaintiff Release from a Named Plaintiff or an executed Class Member Release from a Class Member, the Claims Administrator shall send the Named Plaintiff or Settlement Class Member her award payment. The distributions to Claimants who submit releases shall be made as soon as possible in 2014, but no sooner than January 1, 2014.

5.      Any Named Plaintiff who does not execute and timely deliver an executed Named Plaintiff Release, and any Settlement Class Member who does not execute and timely deliver an executed Class Member Release to the Claims Administrator within two (2) months of the date the Notice of Award was mailed to her shall be ineligible for, and forever barred from receiving, monetary relief under this Settlement Agreement and be deemed to have fully, finally and irrevocably waived, released, and discharged Defendant from any and all claims of sex discrimination, whether known or unknown, actual or

31

potential, from February 9, 2007, to through December 10, 2012, even though said Named Plaintiff or Settlement Class Member has not opted out.

6.    Any undistributed funds that remain after six (6) months after the mailing of the Notice of Award due to failure to execute and timely deliver a release shall be distributed to 501(c)(3) organizations advancing career opportunities for women, including career opportunities in the pharmaceutical industry, as selected by Class Counsel.

7.    Any undistributed funds that remain after one year from the mailing of the Notice of Award due to uncashed checks shall also be distributed to 501(c)(3) organizations advancing career opportunities for women, including career opportunities in the pharmaceutical industry, as selected by Class Counsel, except as provided in Section VIII(C) (i.e., funds undistributed due to uncashed checks and the amounts that would have been paid to Class Members who opt-out unless the Class Member in opting out indicates in her opt out notice that she does not intend to file a lawsuit or claim against Defendant shall be used to reimburse Defendant for its payment of Claims Administration fees and costs up to $100,000).

8.    The Claims Administrator shall maintain the distribution plan, the allocation list and all releases for a period of five (5) years. Defendant shall have access to individual allocation amounts and the releases only upon written notice to Class Counsel and a showing of good cause (e.g., actual litigation by a Claimant or a communication that reasonably threatens litigation by a Claimant). Any dispute as to whether good cause exists for such a requested disclosure shall be submitted to Hunter Hughes for a binding determination.

E.     **Confidentiality Regarding Amount of Monetary Award.**  All Claimants receiving monetary awards will be required to keep the amount of their award confidential, except that they may disclose the amount to immediate family, legal counsel or tax advisors who shall keep such information confidential.

F.     **Non-Admissibility of Fact of Award (or Non-Award).**  Except to the extent that it would constitute a set off in an action for damages claimed for any period covered by this Settlement, neither the fact nor amount of an award, nor the fact of any non-award, shall be admissible in any other proceeding for any purpose other than to enforce a Named Plaintiff Release or a Class Member Release executed in accordance with this claims process, nor shall it be deemed to be a finding as to the merits of any claim.

G.     **Tax Treatment**

1.     **Qualified Tax Status and Tax Responsibilities.**  The Settlement Fund shall be established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, et seq., and shall be administered by the Claims Administrator under the Court's supervision.  The parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment.

2.     **Payment of Federal, State and Local Taxes.**

a.     The parties recognize that the awards to eligible Claimants will be subject to applicable tax withholding and reporting, which will be handled as follows: The Claims Administrator shall serve as Trustee of the portion of Settlement Fund devoted to paying claims ("Claims Fund") and shall act as a fiduciary with respect to the handling, management, and distribution of the claims, including the handling of tax-related

issues and payments. Specifically, the Claims Administrator shall be responsible for withholding, remitting and reporting of the Claimants' share of the payroll taxes from the Claims Fund, and the Company shall be responsible for the employer's share of payroll taxes as set forth in this section.

b.      The Claims Administrator will establish the allocation for tax purposes of the payments made to Claimants to wages, interest, compensatory damages, or such other tax character of such payout as the Claims Administrator may determine, based on the principles set forth in Treas. Reg. §1.468B-4, by reference to the types of claims for which distributions are made and as if Defendant made such payments directly to Claimants.

c.      The Claims Administrator shall inform the Company in writing of the employer's share of all taxes or contributions (*i.e.*, FUTA, SUTA, FICA and Medicare) required to be paid by the Company. The Company shall, within thirty (30) business days of such notice, remit all such payments to the Claims Administrator for payment to appropriate taxing authorities ("Employer Payroll Tax Payment").

d.      The Claims Administrator shall be responsible for the timely reporting and remitting of the Employer Payroll Tax Payment to the appropriate taxing authorities and shall indemnify the Company for any penalty or interest arising out of an incorrect allocation, calculation or reporting, or late payment of the same; provided however that the Claims Administrator does not indemnify the Company to the extent that the Company attempts to aggregate back pay payments from the Qualified Settlement Fund with the Company's own wage payments to current employees in the same calendar year for the purposes of calculating payroll taxes. Subject to the Claims Administrator's obligation to comply with applicable laws, the parties anticipate that any amounts designated as interest

34

shall not be subject to withholding and shall be reported, if required, to the IRS on Form 1099-INT. The amounts paid for emotional distress, if any, shall not be subject to withholding and shall be reported to the IRS on Form 1099-MISC.

e.     Except with respect to the Employer Payroll Tax Payment, the Claims Administrator shall be responsible to satisfy from the Claims Fund any and all federal, state and local employment and withholding taxes, including, without limitation, federal and state income tax withholding, FICA, Medicare and any state employment taxes. The Claims Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs and expenses subject to reporting), and any and all taxes, penalties and other obligations with respect to the payments or distributions from the Settlement Fund not otherwise addressed herein.

f.     The Claims Administrator shall be responsible for procuring an executed Named Plaintiff or Class Member Release from each Claimant prior to paying any monetary allocations to such Claimant.

g.     All (i) taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed on the Company with respect to income earned for any period during which the Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and (ii) expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns

described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses"), shall be paid out of the Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Claims Fund.  The parties hereto agree to cooperate with the Claims Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this section.

     **F.**     **Company Has No Further Obligation, Liability or Responsibility.**  Other than the Company's responsibility for the employer's share of payroll taxes as discussed in Section VIII(G)(2)(c) above, the Company shall have no withholding, reporting or any other tax reporting or payment responsibilities with regard to the Settlement Fund or its distribution to Settlement Class Members.  The Company shall have no liability, obligation, or responsibility for the administration of the Settlement Fund, the determination of any formulas for disbursement, the determination of any award to any Claimant, or the disbursement of any monies from the Settlement Fund except for (1) its obligation to pay the settlement amount no later than five days after Final Approval of the Settlement Agreement; (2) its obligation related to the Employer Payroll Tax Payment as set forth in Section VIII(G)(2)(c); (3) its obligation to pay and advance Claims Administration fees and costs pursuant to Section VIII(C) and (4) its agreement to cooperate in providing information which is reasonably necessary for settlement administration.

**IX.**    **CONFIDENTIALITY**

     **A.**     **Documents and Information Produced by Defendant and Class Counsel.**
All proprietary and confidential documents or information that have previously been provided to either Defendant or Class Counsel as of the date this Settlement Agreement is

executed, or which are produced by Defendant or Class Counsel pursuant to any provision of this Settlement Agreement shall, unless otherwise agreed, be treated as, and thereafter remain, confidential.  Said documents and information shall not be disclosed to anyone other than the mediator or the Court in connection with any proceeding to enforce any provision of this Settlement Agreement.  If such disclosure is deemed necessary by Class Counsel or the Company, Class Counsel or the Company shall identify and disclose to the other party such documents and information deemed necessary to disclose at least ten (10) business days prior to filing such documents with the Court and if a party so requests, shall seek permission to file said documents with the Court under seal.

**B.**     **Return or Disposal of Confidential Documents and Information.**   All proprietary and confidential documents or information that have previously been provided to Class Counsel or to Defendant as of the date this Settlement Agreement is executed, or which are produced by Defendant or Class Counsel pursuant to any provision of this Settlement Agreement, shall, upon request, be destroyed or returned to counsel as follows:

1.   All confidential information exchanged by the parties during the mediation process, except such information reasonably related to the Programmatic Relief described herein, shall be destroyed by the party who received the confidential information within sixty days after the expiration of all appeal rights following Final Approval.

2.   All confidential information reasonably related to the Programmatic Relief described herein shall be destroyed by the party who received it after the expiration of the three (3) year term of the Settlement

3.   Nothing in the preceding paragraphs shall preclude any party from responding to a lawful discovery request, subpoena or court order; provided, however, that the party

against whom such discovery is sought or such subpoena or order is directed agrees to provide prompt notice, a copy of same to counsel for the other parties to this Settlement Agreement so that the party/parties has opportunity to protect its/her/their confidentiality interest. Nor shall anything in the preceding paragraphs preclude any party from retaining attorney work product, provided that they shall maintain the confidentiality of such work product.

X.   **ATTORNEYS' FEES AND EXPENSES OF CLASS COUNSEL**   As discussed above in Section VIII(A) all of Class Counsel's fees and costs, including those in connection with securing Court approval of this Settlement Agreement, the claims process and any monitoring of this Settlement Agreement, shall be paid from the Settlement Fund, following approval of those attorneys' fees and costs by the Court. Subject to approval by the Court, Class Counsel will seek attorneys' fees of not more than 35% of the Settlement Fund for fees, plus reimbursement of all reasonable costs including costs for experts, plus a $150,000 payment for fees on the one year anniversary of final approval for work associated with implementing the Settlement Agreement, plus any interest earned on those amounts until the dates of disbursement to Class Counsel. Defendant agrees not to oppose or contest the reasonableness of Class Counsel's requests. If the Court fails to approve or elects to modify the fee petition submitted by Class Counsel, such failure or modification shall not affect the enforceability of this Agreement or provide any right to the Named Plaintiffs or Class Counsel to withdraw from, modify or terminate this Settlement Agreement. If the Court approves a fee and costs payment of less than the amount sought in the fee petition submitted by Class Counsel, the difference between the amount sought and the amount

awarded will be retained in the Settlement Fund and will be used for disbursement to Class Members who submit timely Claim Forms.

## XI.   ENFORCEMENT AND DISPUTE RESOLUTION MECHANISMS

1.     Within six months of receiving each confidential written progress report from the Company as described in VII(A)(16), Class Counsel may request a meeting/conference call with Defendant's Counsel to discuss compliance issues raised by the Company's report. If Class Counsel requests such a meeting/conference call, counsel for the parties will meet or confer by telephone within six weeks of the request. Nothing in this Agreement shall prevent counsel for the parties from conferring more frequently or as dictated by information either side gathers.

2.     The parties will work diligently and in good faith to resolve all disputes that may arise between them concerning the rights, obligations, and duties of the parties to this Agreement. In the event that the parties cannot agree, the parties will attempt to resolve the dispute with the facilitation of a mediator. In the event that mediation is unsuccessful, then either party may institute an enforcement action.

3.     Enforcement of this Agreement shall be prosecuted by Class Counsel or Defendant only, not third parties. In any action brought to enforce this Agreement, the Court may, in its discretion, award reasonable attorneys' fees and expenses to the prevailing party.

## XII.   GOVERNING LAW

A.     The parties agree that federal law shall govern the validity, construction and enforcement of this Settlement Agreement. To the extent that it is determined that the validity, construction or enforcement of this Settlement Agreement or any Named Plaintiff

Release or Class Member Release executed pursuant to its terms is governed by state law, the law of the District of Columbia shall apply.

**B.**     This Settlement Agreement, including the Exhibits hereto, contains the entire agreement and understanding of the parties with respect to the Settlement. This Settlement Agreement does not impose any obligations on the parties beyond the terms and conditions stated herein. Accordingly, this Settlement Agreement shall not prevent or preclude the Company from revising its employment practices and policies or taking other personnel actions during the term of this Settlement Agreement so long as they are not inconsistent with this Settlement Agreement.

**C.**     Except as specifically provided for herein, this Settlement Agreement may not be amended or modified except with the express written consent of the parties.

## XIII.  OTHER CONDITIONS OF SETTLEMENT

**A.**     **Exhibits.**  The Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

**B.**     **Notices to Counsel.**  All notices to counsel required or desired to be given under this Settlement Agreement shall be in writing and by overnight mail and e-mail to counsel for the respective parties (specifically, to Cyrus Mehri and Ellen Eardley of Mehri & Skalet, PLLC, Sara Kane of Valli Kane &Vagnini LLP, James Nagle of Goodwin Procter LLP, and Jay Cohen of Paul Weiss Rifkind, Wharton & Garrison LLP) at their respective addresses set forth below (or to such other address as any such party or counsel may designate in a notice).

**C.**     **Failure to Insist on Strict Compliance**.  The failure of any party to insist in any one or more instances on strict compliance with the terms and conditions hereof shall

not be construed to be a waiver of remedies available with respect to any prior or subsequent breach.

**D.**     **Settlement Agreement Binding.**   This Settlement Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their respective heirs, dependents, executors, administrators, trustees, legal representatives, personal representatives, agents, successors and assigns; provided, however, that this Settlement Agreements shall not inure to the benefit of any third party.

**E.**     **No Drafting Presumption.**   All parties hereto have participated, through their respective counsel, in the drafting of this Settlement Agreement and, therefore, this Settlement Agreement shall not be construed more strictly against one party than another.

**F.**     **Dispute As To Meaning of Agreement Terms.**   In the event of any dispute or disagreement with respect to the meaning, effect or interpretation of this Settlement Agreement or any Exhibit hereto, or in the event of a claimed breach of the Settlement Agreement, the parties agree that such dispute will be submitted to Hunter Hughes for a binding determination.

**G.**     **Interpretation of Terms.**   Whenever possible, each provision and term of this Settlement Agreement shall be interpreted in such a manner as to be valid and enforceable.

**H.**     **Paragraph and Section Headings.**   Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

**I.**     **Counterparts.**   This Settlement Agreement may be executed in counterparts, and authentic facsimile or scanned signatures shall be deemed to be original signatures for

all purposes. Each signed counterpart together with the others shall constitute the full Settlement Agreement.

     **J.**     **Agreement Binding.**  As of the date on which counsel for the parties execute this Settlement Agreement, this Settlement Agreement will be binding in all respects, unless the Court fails to approve this Settlement Agreement and the Settlement Agreement is thus vacated.

DATED: December ___, 2014

**AGREED TO AND ACCEPTED BY AND ON BEHALF OF MEDICIS PHARMACEUTICAL CORPORATION:**

_____          January 13, 2015
Robert R. Chai-Onn                        Date
Executive Vice President & General Counsel


**AGREED TO AND ACCEPTED BY AND ON BEHALF OF PLAINTIFFS BONNIE BROWN, LESLIE BAGINSKI, LISA LEVINE, LISA CUMMINGS-GALLINA, LAURIE INTROP, BRIDGET OLIVETO, AND LINDSAY PIHALY IN THEIR INDIVIDUAL AND REPRESENTATIVE CAPACITIES:**

_____          January 14, 2015
Cyrus Mehri                               Date
Michael Lieder
Ellen Eardley
Mehri & Skalet PLLC
Counsel for the Plaintiffs

_____          Jan. 14, 2015
Sara Wyn Kane                             Date
Robert J. Valli, Jr.
Valli Kane & Vagnini LLP
Counsel for the Plaintiffs